## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF COLUMBIA

**ROBYN D. WILLIAMS,**
     **2920 P. Street SE, Apt. 1**
     **Washington, DC 20020**

                             *Plaintiff,*

    **v.**

**RED COATS, INC.,**
     **Serve on Registered Agent:**
     **Cogency Global Inc.**
     **1025 Vermont Avenue N.W.**
     **Suite 1130**
     **Washington, DC 20005**

**and**

**DEINE AVILA**
     **Serve:**
     **555 4th Street NW**
     **Washington, DC 20530**

                           *Defendants.*

Civil Action No. _____

**JURY TRIAL DEMANDED**

## COMPLAINT

Plaintiff Robyn D. Williams, by and through counsel, hereby alleges as follows:

## INTRODUCTION

1.    Robyn was fired in early 2019, for two basic reasons: she had heart problems requiring surgery and rest, and she is an African-American.  Shockingly, **she received her termination letter and her FMLA approval paperwork on the same day**, bearing identical dates. This is a suit to vindicate Robyn' rights under federal and District laws outlawing these

1

actions, including the federal and District of Columbia Family and Medical Leave Acts, the prohibition on race discrimination under 42 U.S.C. 1981, and the D.C. Human Rights Act.

## PARTIES

2.      Plaintiff Robyn D. Williams is an African-American, non-Hispanic District of Columbia resident in her late 50s.  At all times relevant to this Complaint, she was an employee or former employee of Red Coats Inc, working in the District of Columbia.

3.      Defendant Red Coats Inc. ("Red Coats") is a District of Columbia corporation and Robyn' former employer.  On information and belief, Red Coats employs more than 100 persons in the District of Columbia.

4.      Defendant Deine Avila ("Ms. Avila") is a Hispanic, non-African-American woman working for Red Coats who was Robyn's supervisor at the time of the discriminatory activities alleged herein.  On information and belief, Ms. Avila continues to work for Red Coats at 555 4th Street NW, Washington, DC 20530.

5.      This Complaint will reference Red Coats and Ms. Avila jointly as the "Defendants."

## JURISDICTION AND VENUE

6.      This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, as this is a "civil action[] arising under the Constitution, [and] laws . . . of the United States."  Under 29 U.S.C. § 2612, Robyn' alleges violations of her federal FMLA rights.  And under the Civil Rights Act 1866, 42 U.S.C. §1981, as amended by the Civil Rights Act of 1991, Robyn' alleges illegal race discrimination. Plaintiff also invokes this Court's supplemental jurisdiction under 28 U.S.C. § 1367 over her related state law claims, since they are part of the same case or controversy.

7.      Venue is proper in the United States District Court for District of Columbia pursuant to 28 U.S.C. § 1391, because "a substantial part of the events or omissions giving rise to the claim occurred" in the District.  *See* 28 U.S.C. § 1391(b)(2).

## STATEMENT OF FACTS

8.     Robyn began working for Red Coats on July 21, 2014, as a janitor providing cleaning services.

9.     For years, Robyn worked for Red Coats at the U.S. Attorney's Office for the District of Columbia, located at 555 4th Street NW, Washington, DC 20530.

10.     On information and belief, Red Coats employed more than 50 individuals within 75 miles of this worksite at all times relevant to this case.

11.     Most of the other Red Coats employees were Hispanic, while Robyn is a non-Hispanic African-American.

12.     Robyn' supervisor Ms. Avila is also Hispanic.  Robyn knew Ms. Avila as "Ms. D."

13.     For almost the entirety of her employment, Robyn worked on the 11th floor and top-floor penthouse, where she consistently received good performance reviews from supervisors and clients.

14.     Robyn was responsible for all of the general cleaning of 32 individual offices, 10 large common areas (which included a kitchen) in the National Security Section in addition to the large common entryway and 4 restrooms.   She worked hard, and consistently asked assisted other employees whenever they needed anything such as a vacuum or special dusting.

15.     But Robyn also had health problems.

16.     In November 2015, Dr. Allen Solomon, a cardiologist at the George Washington Medical Faculty Associates, diagnosed Robyn with supraventricular tachycardia (SVT).

17.     "Supraventricular tachycardia (SVT), also called paroxysmal supraventricular tachycardia, is defined as an abnormally fast heartbeat.  [It is] a broad term that includes many forms of heart rhythm problems . . . that originate above the ventricles (supraventricular) in the atria or AV node [of the heart]." <u>Supraventricular tachycardia: Symptoms and Causes</u>, by Mayo

Clinic Staff, *available at* https://www.mayoclinic.org/diseases-conditions/supraventricular-tachycardia/symptoms-causes/syc-20355243 (last visited January 30, 2020).

18.     On July 30, 2018, Robyn suffered a stroke that left her incapacitated until August 1, 2018, three days later.  The stroke caused symptoms of vertigo and gait imbalance.  Doctors prescribed physical and occupational therapy and told Robyn that she could not work until at least August 10, 2018.

19.     While still incapacitated, Robyn sought and received FMLA leave for the stroke and its aftermath, from July 31st to August 10, 2018.

20.     After she had recovered, Robyn returned to work and continued her excellent performance.   Unfortunately, instead of accommodating Robyn's recent health conditions, Defendants singled her out for harsher treatment.

21.     After her stroke, Ms. Avila would follow Robyn around, watching her suspiciously and criticizing her for sitting down for brief periods to rest, despite Robyn getting all of her work done timely and well.

22.     Additionally, Ms. Avila showed favoritism to the Hispanic employees, and not to Robyn.

23.     For example, if the building was short-staffed, and volunteers were needed to clean an additional floor for extra, overtime pay, Ms. Avila would alert the Hispanic employees to this opportunity first, allowing them to earn extra money.

24.     On the rare occasion Robyn learned of these opportunities in time to volunteer, she would only receive 1 or 1.5 hours of additional compensation, for the same work that a Hispanic employee who completed the assignment would receive two hours.

25.     In February 2019, Ms. Avila re-arranged the assignments of the janitors working at the U.S. Attorney's Office.  Instead of assigning tasks based on need or capacity, Ms. Avila allowed Hispanic janitors to pick their floor assignment first.  The Hispanic janitors chose the higher floors with less traffic, leaving Robyn with the first floor and lobby: a high traffic area with a much more challenging workload.

26.     This assignment pulled Robyn off of the 11th floor, where she had worked for several years, and forced her to take on the 1st floor: more work for the same pay.  She began the 1st floor assignment on February 22, 2019.

27.     Because of the transition, Robyn' heart problems began acting up again.

28.     On March 5, 2019, Robyn broke out in sweat for no apparent reason.  She visited her primary care provider, Dr. Annie DePasquale, at Unity Health Care's Minnesota Avenue Health Center.  Dr. DePasquale wrote Red Coats a letter asking them to excuse Robyn from work for the day.

29.     From March 14-18, 2019, Robyn was under the care of the George Washington ("GW") Medical Faculty Associates Division of Cardiology.

30.     Every day that she was not receiving medical care, and even some days before her appointments, Robyn would be at work, diligently working.

31.     On March 20, 2019, while at work, Robyn experienced an episode of lightheadedness, and had to stop and rest.

32.     On March 22, 2019, Robyn had to visit the GW Medical Faculty Associates Cardiology Division again, for diagnostic testing that required her to wear a heart monitor.  GW scheduled Robyn for an appointment with Dr. Solomon on March 27, 2019 to discuss her plan of care.

5

33.     That same day, GW's registered nurse Nancy Knowlan called and spoke with Ms. Avila about Robyn, explaining the situation.  Ms. Avila confirmed that Robyn was still her employee as of March 22, 2019, but said that Robyn was not to return to work unless she could return to full duty, with no flexible or light duty available.

34.     That same day, Ms. Knowlan wrote a letter stating that Robyn should not return to work until after her March 27th appointment with her cardiologist.

35.     At the follow-up appointment on March 27, 2019, Dr. Solomon told Robyn that her condition required a surgical procedure called a cardiac ablation.  He scheduled the surgery for April 4, 2019.

36.     On March 27, 2019, as soon as she knew about the surgery, Robyn informed Red Coats that she would need FMLA leave.

37.     Ms. Avila told Robyn "**you are taking too much time off work**."  On information and belief, Ms. Avila had embraced a stereotype that Robyn was lazy based on Robyn' race.

38.     On April 4, 2019, Robyn underwent a cardiac ablation, with in-patient care until the following day.  The hospital gave her paperwork explaining her need for leave from work.

39.     Red Coats HR approved Robyn' FMLA leave, stating that the leave ran from March 22nd until April 16th, 2019, with a return date of April 17, 2019.  This FMLA approval paperwork was dated April 17, 2019.

40.     As instructed, Robyn returned to work on April 17, 2019.

41.     When she arrived, Ms. Avila greeted Robyn coldly, saying "did you talk to anybody?  Give me your badge."  Robyn found out she had been terminated.

42.     Bizarrely, Red Coats also sent Robyn a **termination letter dated April 17, 2019, stating that Robyn was "no longer employed with Red Coats, Inc."**  The termination letter claimed that Robyn' last day was March 20, 2019.

43.     The FMLA paperwork was signed by Red Coats Human Resource Generalist Liliana McKay, and the termination letter was signed by Red Coats Human Resource Assistant Jackie Chavarria.

44.     On information and belief, Ms. Avila had Robyn fired during her convalescence from surgery, on behalf of Red Coats, and informed only Ms. Chavarria, not Ms. McKay.

45.     Initially believing the termination letter to be a simple mistake, Robyn approached Red Coats about reinstatement.  After much effort, however, Red Coats just refused to re-employ Robyn at a similar position as required by the FMLA.

### COUNT I—Violations of the Federal Family and Medical Leave Act
### (Both Defendants)

46.     Count I incorporates the preceding and forthcoming paragraphs by reference as if fully set forth herein.

47.     The FMLA provides an employee, like Robyn, with twelve weeks of leave during any twelve-month period if needed for a qualifying medical reason.  29 U.S.C. § 2612(a).

48.     Robyn informed Red Coats of her need to take leave multiple times, including on March 20, 22, and 27, 2019, to attend to her pressing heart problems—including supraventricular tachycardia, a stroke, and associated heart surgery (collectively "Heart Problems").  This included a call from a cardiology nurse at the GW Medical Faculty Associates.

49.     Though Red Coats had ostensibly approved leave for March 22-April 16th, they then inexplicably fired Robyn during this same period.

**A.  FMLA Interference**

50.     Robyn was an eligible employee, as she had worked more than 12 months with Red Coats and more than 1250 hours in the preceding 12 months.

51.     Red Coats was an eligible employer, employing more than 50 people every workday of the year.  Ms. Avila acted directly in the interest of Red Coats as Robyn' supervisor.

52.     Robyn was entitled to leave under the federal FMLA, 29 U.S.C. § 2601 et seq., because her Heart Problems constituted "a serious health condition that ma[de] the employee unable to perform the functions" of her position.  29 U.S.C. § 2612(a)(1)(D).

53.     Robyn gave notice of her need to take leave multiple times, including on March 20, 22, and 27, 2019.

54.     Red Coats initially approved leave from March 22 – April 16, 2019, but then revoked this FMLA leave.  Instead, Red Coats in actuality denied the leave and fired Robyn effective as of March 20, 2019.

55.     Red Coats had no legitimate reason for denying this leave and interfering with Robyn's right to medical leave.

**B.  FMLA Retaliation**

56.     When Red Coats terminated Robyn on April 17, 2019, effective as of March 20, 2019, Red Coats did so in retaliation for Robyn's use of protected medical leave.

57.     Between March 5, 2019 and April 16, 2019, Robyn engaged in protected FMLA activity.  This included requests for leave, and actual use of leave.

58.     Defendants knew that Robyn was exercising her FMLA rights, as evidenced by Red Coats' explicit approval of FMLA leave for March 22-April 16th, among other things.

59.     As stated by Ms. Avila, Red Coats believed Robyn was "taking too much time off work" and for this reason the Defendants decided to terminate Robyn.

60.     As a direct and proximate result of Defendant's unlawful actions in both interfering with and retaliating against Robyn's use or request for FMLA, Robyn was deprived of her right to FMLA leave; lost her permanent employment; and has sustained and will continue to sustain lost wages (including increased use of sick leave) and diminished earning capacity; among other things.

**WHEREFORE**, Plaintiff Robyn Williams, by Counsel, respectfully requests that this Honorable Court enter judgment in her favor on Count I, and against Defendants Red Coats and Ms. Avila as follows:

(a)     Compensatory damages to include the loss of all back and future wages and employment benefits (including sick and annual leave); and medical expenses incurred due to violations of the FMLA in an amount to be determined at trial;

(b)      Pursuant to 29 USC § 2617, for the lack of good faith shown by Defendant, liquidated damages in an amount equal to subsection (a) in an amount to be determined at trial;

(c)     Plaintiff's attorney's fees, expert fees and costs incurred during and in connection with this matter pursuant to 29 USC § 2617 and/or all other applicable state or federal laws;

(d)     Pre- and post-judgment interest on the foregoing amounts;

(e)     Equitable relief, including a letter of recommendation and reinstatement to an equivalent or superior position; and

(f)     Any and all other relief that this Court deems just and proper.

**COUNT II—Violations of the District of Columbia Family and Medical Leave Act
(Both Defendants)**

61.     Count II incorporates the preceding and forthcoming paragraphs by reference as if fully set forth herein.

62.     The District of Columbia Family and Medical Leave Act "was designed to 'ensure job security and health benefits to an employee during a temporary period of absence resulting from a . . . serious health condition[].'" *Chang v. Institute for Public-Private Partnerships, Inc.,* 846 A.2d 318, 326 (D.C. 2004) (citations omitted).

63.     The District of Columbia FMLA provides an employee, like Robyn, with 16 weeks of leave during any 24-month period if needed for a qualifying medical reason.  D.C. Code § 32-503.

64.     Robyn informed Red Coats of her need to take leave multiple times, including on March 20, 22, and 27, 2019, to attend to her pressing heart problems—including supraventricular tachycardia, a stroke, and associated heart surgery (collectively "Heart Problems").  This included a call from a cardiology nurse at the GW Medical Faculty Associates.

65.     Red Coats approved leave for March 22-April 16th, but inexplicably fired Robyn during this same period.

**C.  DC FMLA Interference**

66.     Robyn was an eligible employee, as she had worked more than one year with Red Coats and more than 1000 hours in the preceding 12 months.  D.C. Code § 32-501.

67.     Red Coats was an eligible employer, because they employed Robyn in the District.  D.C. Code § 32-501.

68.     Robyn was entitled to leave under the DC FMLA because her Heart Problems constituted "serious health condition" requiring inpatient care, continuing treatment and supervision.  D.C. Code § 32-501.

69.     Robyn gave notice of her need to take leave multiple times, including on March 20, 22, and 27, 2019.

70.     Red Coats initially approved leave from March 22 – April 16, 2019, but then revoked this FMLA leave.  Instead, Red Coats in actuality denied the leave and fired Robyn effective as of March 20, 2019.

71.     Red Coats had no legitimate reason for denying this leave and interfering with Robyn's right to medical leave.

**D.  DC FMLA Retaliation**

72.     When Red Coats terminated Robyn on April 17, 2019, effective as of March 20, 2019, Red Coats did so in retaliation for Robyn's use of protected medical leave.

73.     Between March 5, 2019 and April 16, 2019, Robyn engaged in protected DC FMLA activity.  This included requests for leave, and actual use of leave.

74.     Defendants knew that Robyn was exercising her DC FMLA rights, as evidenced by Red Coats' explicit approval of leave for March 22-April 16th, among other things.

75.     As stated by Ms. Avila, Red Coats believed Robyn was "taking too much time off work" and for this reason the Defendants decided to terminate Robyn.

76.     As a direct and proximate result of Defendant's unlawful actions in both interfering with and retaliating against Robyn's use or request for DC FMLA, Robyn was deprived of her right to DC FMLA leave; lost her permanent employment; and has sustained and will continue to

sustain lost wages (including increased use of sick leave) and diminished earning capacity; among other things.

**WHEREFORE**, Plaintiff Robyn Williams, by Counsel, respectfully requests that this Honorable Court enter judgment in her favor on Count II, and against Defendants Red Coats and Avila as follows:

(a)     Compensatory damages to include the loss of all back and future wages and employment benefits (including sick and annual leave) due to violations of the DC FMLA in an amount to be determined at trial, *see* D.C. Code §§ 32-510(c); 32-509(b)(6);

(b)     An amount equal to the greater of subsection (a) or Plaintiff's consequential damages plus any medical expenses not covered by the health insurance of the employee, *see id.*;

(c)     Plaintiff's attorney's fees, expert fees and costs pursuant to D.C. Code §§ 32-510(c); 32-509(b)(7), and/or all other applicable state or federal laws;

(d)     Pre- and post-judgment interest on the foregoing amounts;

(e)     Equitable relief, including a letter of recommendation and reinstatement to an equivalent or superior position; and

(f)     Any and all other relief that this Court deems just and proper.

### COUNT III—Violation of 42 U.S.C. § 1981
### (Both Defendants)

77.     Count III incorporates the preceding and forthcoming paragraphs by reference as if fully set forth herein.

78.     Defendants' treatment of Robyn described above—including her termination and discrimination in assignments and compensation—is in violation of the rights afforded to her by the Civil Rights Act 1866, 42 U.S.C. §1981, as amended by the Civil Rights Act of 1991.

79.    Robyn' race was a motivating factor in Defendants' decisions to terminate her employment.

80.    Robyn' race was also a motivating factor in Defendants' decisions to re-assign her to the 1st floor, and to pay her less for completing extra assignments.

81.    As a result of Defendants' discrimination, Robyn has been denied employment providing substantial compensation and benefits, thereby entitling her to injunctive and equitable monetary relief; and she has suffered a damaged reputation, lost wages and benefits, future employment prospects, anguish, humiliation, distress, inconvenience and loss of enjoyment of life, thereby entitling her to compensatory damages.

82.    In their discriminatory actions, Defendants acted with malice or reckless indifference to Robyn' rights, thereby entitling her to an award of punitive damages.

**WHEREFORE**, Plaintiff Robyn Williams, by Counsel, respectfully requests that this Honorable Court enter judgment in her favor on Count III, and against Defendants as follows:

(a)    Compensatory damages to the maximum extent allowable by law, including but not limited to emotional distress, damaged reputation, lost future employment prospects, and additional costs, in an amount to be determined at trial;

(b)    Equitable relief, including but not limited to a judgment equal to the value of all back and future wages and employment benefits (including sick and annual leave), in an amount to be determined at trial, a letter of recommendation, and reinstatement to an equivalent or superior position;

(c)    Punitive damages pursuant to 42 U.S.C. § 1981;

(d)    Plaintiff's attorney's fees, expert fees and costs pursuant to 42 U.S.C. § 1988, and/or all other applicable state or federal laws;

(e)     Pre- and post-judgment interest on the foregoing amounts;

(f)     Any and all other relief that this Court deems just and proper.


### COUNT IV— **Race Discrimination Violation of the D.C. Human Rights Act**
### **(Both Defendants)**

83.     Count IV incorporates the preceding and forthcoming paragraphs by reference as if fully set forth herein.

84.      Defendants' treatment of Robyn described above—including her termination and discrimination in assignments and compensation—is in violation of the rights afforded to her by the D.C. Human Rights Act, D.C. Code § 2-1401.01 et seq.

85.     Robyn was qualified for her position, having performed the essential functions with excellence throughout her tenure.

86.     Robyn' race was a substantial factor in Defendants' decisions to terminate her employment.

87.     Robyn' race was also motivating factor in Defendants' decisions to re-assign her to the 1st floor, and to pay her less for completing extra assignments.

88.     As a result of Defendants' discrimination, Robyn has lost wages and benefits, been denied employment providing substantial compensation and benefits, and suffered damaged reputation, lost future employment prospects, anguish, humiliation, distress, inconvenience and loss of enjoyment of life.

89.     In their discriminatory actions, Defendants acted with malice or reckless indifference to Robyn' rights, thereby entitling her to an award of punitive damages.

**WHEREFORE**, Plaintiff Robyn Williams, by Counsel, respectfully requests that this Honorable Court enter judgment in her favor on Count IV, and against Defendants as follows, pursuant to D.C. Code § 2-1403.16(b):

(a)    Compensatory damages to the maximum extent allowable by law, including but not limited to all back and future wages and employment benefits (including sick and annual leave), emotional distress, damaged reputation, lost future employment prospects, and additional costs, in an amount to be determined at trial;

(b)    Equitable relief, including but not limited a letter of recommendation, and reinstatement to an equivalent or superior position;

(c)    Punitive damages pursuant to D.C. Code § 2-1403.16(b) and *Daka, Inc. v. Breiner*, 711 A.2d 86, 98 (D.C. 1998);

(d)    Plaintiff's attorney's fees, expert fees and costs pursuant to D.C. Code § 2-1403.13(a), and/or all other applicable state or federal laws;

(e)    Pre- and post-judgment interest on the foregoing amounts;

(f)    Any and all other relief that this Court deems just and proper.


### COUNT V—Disability Discrimination Violations of the D.C. Human Rights Act
### (Both Defendants)

90.    Count V incorporates the preceding and forthcoming paragraphs by reference as if fully set forth herein.

91.    Defendants' treatment of Robyn described above—including her termination and discrimination in assignments and compensation—is in violation of the rights afforded to her by the D.C. Human Rights Act, D.C. Code § 2-1401.01 et seq.

## A.  Discriminatory Termination

92.     Robyn was qualified for her position, having performed the essential functions with excellence throughout her tenure.

93.     Robyn' Heart Problems constitute a disability under the D.C. Human Rights Act, as it "substantially limits one or more of the major life activities of an individual having a record of such an impairment or being regarded as having such an impairment."  *See* D.C. Code § 2-1401.02(5A).

94.     The major life activities at issue include, but are not limited walking, thinking, and working, and the major bodily functions of the circulatory and neurological systems.

95.     Defendants could have reasonably accommodated Robyn by allowing her to take short breaks as needed, and attend necessary doctor appointments, while still accomplishing her tasks.

96.     Robyn' disability was a substantial factor in Defendants' decisions to terminate her employment.

97.     As a result of Defendants' discrimination, Robyn has been denied employment providing substantial compensation and benefits, and she has suffered damaged reputation, lost future employment prospects, anguish, humiliation, distress, inconvenience and loss of enjoyment of life.

98.     In their discriminatory actions, Defendants acted with malice or reckless indifference to Robyn' rights, thereby entitling her to an award of punitive damages.

## B.  Failure to Accommodate

99.     Defendants knew of Robyn' Heart Problems, for the reasons stated above.

100.    Red Coats, through Ms. Avila, refused to reasonably accommodate Robyn, by moving her to a more difficult floor to clean, refusing to allow Robyn to sit down and take adequate breaks, refusing to provide her medical leave for treatment from March 20 to April 17, 2019 and punishing her for attending to her medical appointments.

101.    Defendants refusal to offer Robyn a reasonable accommodation was a substantial factor in her termination.

102.    As a result of Defendants' acts, Robyn has been denied employment providing substantial compensation and benefits, and she has suffered damaged reputation, lost future employment prospects, anguish, humiliation, distress, inconvenience and loss of enjoyment of life.

103.    In refusing a reasonable accommodation, Defendants acted with malice or reckless indifference to Robyn' rights, thereby entitling her to an award of punitive damages.

**WHEREFORE**, Plaintiff Robyn Williams, by Counsel, respectfully requests that this Honorable Court enter judgment in her favor on Count V, and against Defendants as follows, pursuant to D.C. Code § 2-1403.16(b):

(a)    Compensatory damages to the maximum extent allowable by law, including but not limited to all back and future wages and employment benefits (including sick and annual leave), emotional distress, damaged reputation, lost future employment prospects, and additional costs, in an amount to be determined at trial;

(b)    Equitable relief, including but not limited a letter of recommendation, and reinstatement to an equivalent or superior position;

(c)    Punitive damages pursuant to D.C. Code § 2-1403.16(b) and *Daka, Inc. v. Breiner*, 711 A.2d 86, 98 (D.C. 1998);

(d)     Plaintiff's attorney's fees, expert fees and costs pursuant to D.C. Code § 2-1403.13(a), and/or all other applicable state or federal laws;

(e)     Pre- and post-judgment interest on the foregoing amounts;

(f)     Any and all other relief that this Court deems just and proper.

## JURY DEMAND

Plaintiff requests a trial by jury on all claims made herein.


ROBYN D. WILLIAMS


By Counsel: *K. Craig Welkener*
K. Craig Welkener, Esq. (DC Bar #1033585)
Timothy P. Bosson, Esq. (DC Bar #1029002)
[D.D.C. renewal application pending]
BOSSON LEGAL GROUP, PC
8300 Arlington Blvd., Ste. B2
Fairfax, VA  22031
Ph: (571) 775-2529
Fax: (571) 775-2521
tbosson@bossonlaw.com
cwelkener@bossonlaw.com

*Counsel for Plaintiff*